In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-24-00322-CR**
_____

**TONYA BOWMAN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court**
**Jefferson County, Texas**
**Trial Cause No. F21-36546-0**

**MEMORANDUM OPINION**

Tonya Bowman ("Bowman," "Defendant," or "Appellant") appeals her conviction for intoxication manslaughter, a second-degree felony. *See* Tex. Penal Code Ann. § 49.08. On July 5, 2020, shortly after midnight, Bowman was driving her Jeep heading home when she stopped and pulled over in a gas station parking lot on Highway 90. Later, she pulled out of the parking lot and back onto Highway 90. When she pulled out, her Jeep collided with a Toyota Camry that was traveling on Highway 90. There were three occupants in the Camry, a driver, a passenger in the

front seat, and a passenger in the backseat. The passenger in the back seat of the Camry was killed in the collision. The officers who responded to the accident determined Bowman failed to yield the right of way to the Camry. The officers at the scene of the accident interviewed Bowman and testified at trial they could smell alcohol on Bowman. They also testified that they obtained a warrant for a blood draw from Bowman. Bowman was taken into custody and later charged with intoxication manslaughter. The blood alcohol test result which was also entered into evidence during trial showed Bowman had a blood alcohol concentration of .104 which is over the .08 statutory limit.[1]

A grand jury indicted Bowman for

> operat[ing] a motor vehicle in a public place while [Bowman] was intoxicated by not having the normal use of her mental and physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, and a combination of at least two of these substances into her body, and by reason of such intoxication, caus[ing] the death of . . . Alexandria Esquivel, by accident and mistake, to-wit: by failing to yield the right of way to Alexandria Esquivel and striking an automobile occupied by Alexandria Esquivel[.]

Bowman initially pleaded "not guilty" to the offense. After several days of a jury trial, and upon the conclusion of the presentation of evidence, but prior to the submission of the case to the jury, Bowman changed her plea to "guilty" pursuant to a plea agreement. In one appellate issue, Bowman argues her plea was involuntary,

---

[1] *See* Tex. Penal Code Ann. § 49.01(2)(B).

requiring the reversal of her conviction. According to Bowman, she agreed to plead guilty "with the specific understanding that the State would not seek or argue for an affirmative finding of a deadly weapon." Bowman alleges that she was induced into pleading guilty based on misleading information that the State would not seek or argue for an affirmative finding of a deadly weapon, and that she otherwise would not have pleaded guilty. We affirm.

Plea Negotiations and Text Messages

On May 30, 2024, after the trial court had ruled that the defense could not use its two expert witnesses (one who was a forensic consultant and toxicologist and one who was an accident reconstructionist who planned to testify that the excessive speed of the other vehicle caused or contributed to the accident), the parties rested and finished discussions about the jury charge, and the trial court took a recess. According to evidence in the appellate record,[2] that same day Defense Counsel 2[3] and Prosecutor 2 exchanged the following text messages about a plea agreement:

> [Defense Counsel 2:] Call me[.] We will take the deal for the cap of 10 and waive appeal. I will put on the record that we are entering plea with understanding that punishment range is probation all the way up to 10 years TDC. We will reset for a PSI in the standard time. Sound good?

---

[2] Photographs from Prosecutor 2's phone of the text messages were admitted for purposes of the motion for new trial.

[3] The appellate record establishes that the prosecution and defense each had a lead counsel and a co-counsel for the case. We use "Prosecutor 1" and "Defense Counsel 1" to designate lead counsel for the parties and "Prosecutor 2" and "Defense Counsel 2" to designate co-counsel for the parties.

[Prosecutor 2:] We are going to have to eat a huge sh[#$] sandwich with the family for the cap of 10. So if you put [Prosecutor 1] in the spot of having to concede anything on the deadly weapon deal he is going to push back. That's my two Pennie's

[Defense Counsel 2:] We won't mention D[eadly ]W[eapon][.] Cause the more i think of it the judge can't do probation with a DW so obviously it wasn't part of the deal since we are entering plea and asking for probation and resetting for PSI

[Prosecutor 2:] True[.] So y'all would have to get judge to give deferred as the only probation option

[Defense Counsel 2:] Statute says no deferred on intox[.] Unless you want to plea to manslaughter

[Prosecutor 2:] Yeah you're right. [Prosecutor 1] isn't gonna go for that

[Defense Counsel 2:] Judge can't do deferred but he can do probation[.] And on probation she has to do a minimum of 4 months jail per statute[.] [Judge Stevens] would give 6 but law says 4 is minimum

[Prosecutor 2:] Yeah. Can't do that though. Just gone too far to cut bait on intox manslaughter[.] Does that change things for y'all or do you still want to try and do the cap

[Defense Counsel 2:] Yes we will do cap on intox manslaughter for 10 years and i will put on record with client that she is entering plea with understanding that probation to 10 years in prison is option and we are resetting for PSI to help judge on deciding probation vs prison[.] You don't need to say anything I'm just covering bases with client on record

[Prosecutor 2:] But if [Judge Stevens] hears it he will make DW finding.

[Defense Counsel 2:] Well he might and we can argue that point at that time[.] I really think this stays with Thorne since he heard trial

[Prosecutor 2:] Ok. Make sure and cover your butt with your client on that because I have a feeling [Judge Stevens] would hear it

4

[Defense Counsel 2:] Understood

[Prosecutor 2:] I got to take my a[#$] chewing with the family before we get it all done

Entry of Guilty Plea

Later that same day upon returning to the courtroom, the parties notified the trial court that Bowman wanted to change her plea to "guilty," and the trial judge specifically asked the Defendant about her plea as follows:

THE COURT: All right. The Court is back in session in Cause No. 21-36546, State of Texas versus Tonya Bowman. The Court has been advised by counsel representing Ms. Bowman that Ms. Bowman wishes to change her plea. Is the State ready to go forward with that?

[Prosecutor 1]: Yes, we are, Judge.

THE COURT: All right. Is the defense?

[Defense Counsel 2]: Yes, Your Honor.

THE COURT: All right. Would you like to come forward with Ms. Bowman?

[Defense Counsel 2]: We can, Your Honor.

THE COURT: She needs to be sworn.

(DEFENDANT SWORN BY THE CLERK.)

THE COURT: All right. Ms. Bowman, do you waive the formal reading of the indictment?

THE DEFENDANT: Yes.

THE COURT: All right. The indictment, ma'am, alleges the second degree felony as you know alleging that on or about July the 5th of

5

2020, in Jefferson County, Texas, that you did then and there operate a motor vehicle in a public place and that you were intoxicated and not having normal use of mental or physical faculties by reason of alcohol – introduction of alcohol, a controlled substance, a drug, a dangerous drug, or a combination of substances into your body, and by reason of that intoxication caused the death of another, namely, Alexandria Esquivel, by accident and mistake by failing to yield the right-of-way and striking the automobile occupied by the deceased.
How do you plead?

THE DEFENDANT: Guilty.

THE COURT: Ma'am, are you pleading guilty freely and - - are you pleading guilty freely and voluntarily and only because you are guilty?

THE DEFENDANT: Yes.

THE COURT: All right. The State tendered State's Exhibit 1. Is that correct?

[Prosecutor 1]: Yes, Your Honor.

[Defense Counsel 2]: No objection.

THE COURT: All right. It's admitted.
(STATE'S EXHIBIT NO. 1 ADMITTED.)

THE COURT: Ms. Bowman, the paperwork I have before me appears to have your signature. Is that your signature on all of this paperwork?

THE DEFENDANT: Yes.

THE COURT: Ma'am, did you understand everything contained in the paperwork as your attorney - - your attorneys explained all of these matters to you?

THE DEFENDANT: Yes.

THE COURT: Did you further understand that in return for your plea of guilty the State was going to - - and your attorney were going to

request a presentence investigation and that the State would not recommend anything higher than punishment at ten years in the Texas Department of Corrections? In other words, there's a ceiling on whatever their recommendation is. Of course, your recommendation and your attorneys' recommendation will be something different and will be also featured in the presentence report.

You've got excellent attorneys. I know they've explained to you this process. But it's your opportunity to talk with the probation officer, give your background, your life, what you're looking forward to, and, of course, get recommendations . . . from others that are involved in your life.

And I believe we are scheduled to come back for that on about July the 15th of 2024 at 9:00 a.m. So, you do remember that the paperwork does reflect that. Is that correct?

THE DEFENDANT: Yes.

THE COURT: Is there any evidence [Defense Counsel 2], that Ms. Bowman is incompetent?

[Defense Counsel 2]: No, Your Honor.

THE COURT: All right. And, Ms. Bowman, are you a citizen of the United States?

THE DEFENDANT: Yes.

THE COURT: . . . I will accept your plea at this time, but I'm not going to make any findings of anything at this time. We'll do the presentence report and - -

[Defense Counsel 2]: And, Judge, can I put one thing on the record briefly?
. . .

THE COURT: Yes.

[Defense Counsel 2]: . . . Tonya, we were about to argue your case. We've been here two weeks now, and the State revised their previous offer in this case to a ten-year cap which means that you could get

7

anywhere from probation up to ten years in prison. And with that revision and the rulings that the Judge made in this case and the fact that we're about to argue your case, you've made the voluntary decision freely and voluntarily to accept the deal from the State and enter a plea agreement for a binding cap of ten years?

THE DEFENDANT: Yes.

[Defense Counsel 2]: All right. And that was your decision that you made freely and voluntarily?

THE DEFENDANT: Yes.

State's Exhibit 1 included documents titled "Written Plea Admonishments" and "Agreed Punishment Recommendation[.]" The document titled "Written Plea Admonishments" is dated May 30, 2024, and it is signed by Bowman in multiple sections. It includes admonishments stating Bowman was charged with the second-degree felony offense of "intoxication manslaughter with a vehicle" and, if convicted, she would face the range of punishment of "[a] term of not more than 20 years or less than 2 years in the Institutional Division of the Texas Department of Criminal Justice[]" and "a fine may be assessed not to exceed $10,000." There is a section of the "Written Plea Admonishments" that is styled, "Stipulations, Waivers & Judicial Admission[,]" wherein Bowman signed her name and affirms "I understand the foregoing admonishments from the Court and I am aware of the consequences of my plea." The "Agreed Punishment Recommendation" dated May 30, 2024, also signed by Bowman, states that "[t]he defendant's punishment will not exceed a cap of 10 years in the Institutional Division."

8

The parties returned to the trial court for a sentencing hearing as scheduled on July 15, 2024. According to testimony in the appellate record, prior to the sentencing hearing, the prosecution and defense counsel met in the trial judge's chambers, and the trial judge at some point commented that he knew that the State was going to be asking for a deadly weapon finding and the trial court stated that he was aware of cases that allowed him to make a deadly weapon finding without the State's giving notice it was seeking a deadly weapon finding.

The record of the sentencing hearing shows that the trial court called the case, received the pre-sentencing report, and then asked the State if it had any motions to make, and the State then requested that the trial court make an affirmative finding that a deadly weapon was used in the commission of the offense. The defense opposed the request stating:

> [Defense Counsel 2]: . . . There was nothing in the plea in this case as to a deadly weapon. That is completely omitted. If the State - - if that was something the State was trying to seek, they could have done that then. It increases the punishment and changes the parole law in this case, Judge. So, we would argue that it is outside of the parameters of . . . the plea agreement.
>     Also, Judge, . . . this is a unique situation where the Court had already . . . prepared the jury charge, and there was no special issue in the jury charge as to a deadly weapon. So, this was not something that the State - - that the defense anticipated.
>     In addition, no notice has been filed by the State as to a deadly weapon in this case. At any point in the four years that this case has been pending, nothing has been filed to give notice of an intent to ask for an affirmative deadly weapon finding.
>     In addition, case law is very clear that the best way to give notice of a deadly weapon in a case is to put it in the indictment. I've read the

9

indictment, Judge. I have it right here in front of me. As the Court will see, there is nothing in the indictment that says anything about a deadly weapon. And that is very easy for the State to add from the beginning, and that is completely omitted from the indictment.

And I do believe that since we have argued before in this case about decisions that Judge [] has made . . . that is controlling in this case . . . *State* [*v.*] *Joseph Duncan* . . . Cause No. 1933323.

In that case, Judge [] after a plea in a similar case involving a - - that was a hit-and-run but also alleged an intoxication, I believe, with a death in a motor vehicle. After the plea, Judge Stevens decided to add the deadly weapon finding. That case was appealed; and prior to the Appellate [] Court making a decision, Judge Stevens decided to reverse himself after seeing the case law that was presented in that case by [defense counsel in that case] and ended up removing the deadly weapon finding because it was not something that had been pled in the plea agreement. It was not something that the State had given any notice of, and it was not contained in the indictment.

So, for those reasons, Judge, we are asking that the Court please deny adding the affirmative weapon. And if the Court was to add that, we do believe that that would give us grounds for an appeal in this case.

Prosecutor 1 responded that defense counsel was incorrect that the deadly weapon finding increases the sentence because it does not change the two-to-twenty-year range for the sentence for the charged offense. The prosecutor also argued that the indictment put Bowman on notice that the State could seek a deadly weapon finding because the indictment alleged the manner and means of how the death occurred was with a vehicle. He further argued that caselaw supports the State's request for a deadly weapon finding in this context and that the prosecutor has "not come across anything that suggests that anything else is more appropriate than an affirmative finding."

10

Defense Counsel 2 argued that he and Bowman understood the plea agreement terms were "probation up to 10 years[]" and the guilty plea was with the understanding of that punishment range. Defense Counsel 2 argued that when the trial court makes an affirmative finding of a deadly weapon Bowman becomes ineligible for probation. Defense Counsel 2 stated if the defense ever thought a deadly weapon finding would be applied in this case, then that would have been something discussed "during the plea." He also asserted that the pre-sentencing investigation indicates that probation would be an option. According to Defense Counsel 2, the affirmative finding of a deadly weapon "completely changes the punishment range" and Bowman "was under the impression that by entering a plea [of guilty], she had the opportunity to beg [the trial court] for probation and she could get up to ten years[]" so adding a deadly weapon finding would make her plea of guilty involuntary. Defense Counsel 2 argued the defense did not ever receive written notice that the use of a deadly weapon was an issue at the time of the trial, that a motor vehicle is not a deadly weapon per se, that there was no language in the indictment that says the motor vehicle in its use or intended use was capable of causing death or serious bodily injury, and that the State in this case had the last four years to file notice of a deadly weapon but it did not.

Prosecutor 1 argued that an affirmative finding of a deadly weapon is proper under article 42A.054(b)(1) of the Texas Code of Criminal Procedure. The

11

prosecutor asserted that the indictment provided more than sufficient notice, and the State argued that defense counsel's comments at the time of the plea about the range being "probation up to 10 years" does not "hamstring" the trial court because the trial court gets to decide whether an affirmative finding applies. Just because Bowman may have desired to receive probation does not mean she was not properly admonished, and pre-sentence investigations always give the probation options because at the time the plea was announced and agreed to the trial court has not decided whether to enter an affirmative finding, and the pre-sentence investigations provide all the options to the court.

Defense Counsel 2 then asked the trial court to go ahead and "make the finding now because it will change how I proceed in punishment[]" and argued that if the trial court makes the affirmative finding and probation is not an option, "then all we're doing is arguing the 2 to 10 punishment." The trial court made a deadly weapon finding, and defense counsel objected. The defense stated that, because probation was not an option and putting on witnesses or evidence would not "be fruitful at this point[,]" defense counsel would only be making an argument as to the range of punishment. The defense asked for a punishment of "two years or something toward the lower end of the punishment range[.]" The prosecutor argued that a ten-year sentence was appropriate.

The trial court sentenced Bowman to ten years of confinement and entered a finding that Bowman used or exhibited a deadly weapon—an automobile—in the commission of the crime.

Motion for New Trial

Bowman, through her newly appointed appellate counsel, filed Defendant's Motion for a New Trial and Motion in Arrest of Judgment (the Motion). In the Motion, Bowman argued that her plea was involuntary and based upon the State's representation that the State would not seek a deadly weapon finding if Bowman pleaded guilty, and that, because this representation induced her guilty plea, the trial court should grant a new trial. In support of the motion, Bowman filed her sworn affidavit and the sworn affidavit of one of her attorneys.

Defense Counsel 1 states in his affidavit which is attached to the Motion for a New Trial, in relevant part:

> Tonya Bowman was indicted for intoxication manslaughter in August of 2020. The indictment alleges, by accident or mistake, that Bowman caused the death of another using a vehicle, while intoxicated. The indictment does not contain language regarding a deadly weapon. The State never filed a notice of intent to seek a deadly weapon finding.
> I was retained as co-counsel with [Defense Counsel 2] to represent Bowman in September of 2022. I reviewed all of the evidence in the case and began preparing the matter for trial. In the years leading up to the trial, the State offered a plea deal of fifteen years in prison along with an affirmative finding of a deadly weapon. We declined the offer and continued to prepare for trial. In the weeks leading up to trial, the State came back to us with a reduced offer of twelve years in prison and a deadly weapon finding. Again, our client declined the proposal, in great part, because of the deadly weapon finding.

13

On May 20, 2024, the Criminal District Court assigned [] the Case to the Jefferson County Drug Court for trial and we beg[a]n picking a jury, after, again, rejecting the twelve year offer from the State. It was our belief, based on the evidence that, even if a jury convicted Bowman, they would give serious consideration to probating any sentence in her case. The trial commenced over the better part of two weeks and it was our position that the case and evidence were generally favorable to us. But, after the State rested their case, the Judge excluded both of our expert witnesses in the case, something that had never happened to me during the course of my career.

In the wake of that decision, the State and my co-counsel, [Defense Counsel 2], began behind-the-scenes negotiations for a potential resolution with a plea. I was primarily focused on preparing for closing argument and potential objections to the jury charge. During the negotiations, [Defense Counsel 2] specifically informed[] counsel for the State that any deal that involved [a]n affirmative finding [of] the deadly weapon would be a non-starter for our client because we could not obtain probation from the Court. [Defense Counsel 2] and counsel for the State agreed to a cap of 10 years in prison and no assertation of a deadly weapon. And, with that assurance Ms. Bowman elected to plead guilty and allow the Judge to sentence her after the completion of a presentence report.

On July 15, 2024, we returned for sentencing, prepared to make a compelling case for the Court to give Ms. Bowman probation rather than prison. Instead, we were greeted with an active effort by the State to secure a deadly weapon finding prior to any evidence about the sentencing itself. [Defense Counsel 2] objected to this being outside the bounds of the plea agreement and to the lack of notice of intent to secure the affirmative finding. These objections were overruled. The Court made the deadly weapon finding before proceeding to hear any evidence in support of probation, effectively nullifying any real evidence or arguments from Bowman at sentencing.

While I am aware that a Judge may find a deadly weapon was used in any case involving a death, I am also aware that the law and the case law consistently reiterate that he need not do so and it certainly [is] not automatic. Were it automatic, a vehicle would be a *per se* deadly weapon like a gun. It is not. As such, it was my belief that the State would not be pursuing a deadly weapon finding and the lack of mention of it would likely result in the Court not finding it *sua sponte* and, thus, giving Bowman a decent chance at probation. Had I known that this

14

was not the State's position, I would have more strongly opposed any plea deal.

Moreover, though, I believe Bowman's plea was misled and involuntary. Had she known that the State would actively seek a deadly weapon finding, she would have almost certainly rejected the plea proposal, as she did the first two, and would have proceeded to closing argument, deliberation, and a determination by the jury.

In her affidavit, Bowman states in pertinent part as follows:

I was indicted for intoxication manslaughter in Jefferson County, Texas. I hired [Defense Counsel 2] and [Defense Counsel 1] to be my lawyers in the case. I rejected several plea offers from the State prior to trial because they involved significant time in prison and a deadly weapon finding that would impact my ability to make parole.

We went to trial in May, 2024. [Defense Counsel 1] was the primary trial counsel. The trial lasted for two weeks. We expected to put on two expert witnesses, one about blood/alcohol testing and one about the cause of the accident. But[] the Judge would not let us present our evidence and experts to the jury. As a result, I was very concerned about what might happen. [Defense Counsel 2] began texting with the prosecutor and they offered a new type of deal. The plea was for a cap of ten years and, as I understood it, I would be eligible for probation from the Judge because the State had not asked for and would not request a deadly weapon finding. With that belief and understanding, I agreed to plead guilty and was expecting to be able to have a shot at probation.

Instead, at sentencing, the prosecutor got up and made a big deal out of the deadly weapon and requested the court to find one was used and that I should go to prison. [Defense Counsel 2] argued to the court, but the Judge ruled against me.

I do not believe that my plea was voluntary because I would not have accepted the offer had I known they would seek a deadly weapon [finding] and probation would not be available.

At the hearing on the motion for new trial, Bowman and her attorneys testified for the defense, and a prosecutor testified for the State. Defense Counsel 2 testified that prior to trial, Prosecutor 1 made a verbal offer of a fifteen-year sentence and a

15

revised offer of a twelve-year sentence. According to Defense Counsel 2, during the entire four years the case was pending up until Bowman's guilty plea, the State never orally or in writing discussed the affirmative finding of a deadly weapon in the case. Defense Counsel 2 agreed that the indictment contained "no words such as the State intends to seek a deadly weapon finding[]" and that he had "always operated under the assumption that the State had to give me notice of their intent to seek a deadly weapon [finding]." That said, Defense Counsel 2 stated he had since learned that a 2010 Court of Criminal Appeals case holds that the indictment does not have to specifically allege the defendant used a deadly weapon and that a judge can add a deadly weapon finding if the judge can piece together certain words in the indictment.

Defense Counsel 2 testified that during the trial, he and Prosecutor 2 reached a plea agreement with a cap of ten years, and the plea offer was "silent on the issue of the deadly weapon[.]" Defense Counsel 2 communicated clearly that the defense would be asking for probation, and he and Prosecutor 2 specifically discussed whether Bowman could get deferred or straight probation. According to Defense Counsel 2, he knew that if the case returned to Judge Stevens for sentencing that Judge Stevens would on his own make a deadly weapon finding under the facts. Defense Counsel 2 believed Judge Thorne would handle the sentencing because Judge Thorne had heard the two-week trial, and Defense Counsel 2 did not believe

16

that Judge Thorne would on his own add a deadly weapon finding and Bowman would therefore be eligible for probation. Defense Counsel 2 testified that in discussing with Bowman the impact of the plea agreement, he specifically told her that if Judge Stevens presided over the sentencing, then there would be a deadly weapon finding but that Defense Counsel 2 was optimistic that Judge Thorne would hear the sentencing and that he would not automatically add the deadly weapon finding. Prior to Bowman entering her plea, Defense Counsel 2 learned that Judge Thorne would handle sentencing, so Defense Counsel 2 informed Bowman that there would not be an automatic deadly weapon finding. According to Defense Counsel 2, it was his and Bowman's understanding that, under the plea agreement with the State, the State would not request a deadly weapon finding at sentencing, Bowman relied on that belief in pleading guilty, Defense Counsel 2 advised her to enter a plea based on that belief, and she would have never pled guilty if she knew the State was going to request a deadly weapon finding. Defense Counsel 2 recalled that the defense was prepared to put on a case for probation to the jury, and he believed that Bowman entered her plea based in part upon the misinformation that the State would not seek the deadly weapon finding. Defense Counsel 2 testified that as a result, he believed her plea of guilty was involuntary. Defense Counsel 2 testified that the first time he learned that the State planned to request a deadly weapon finding was when

17

the attorneys were in the judge's chambers prior to the sentencing, and the judge mentioned that the State would be asking for a deadly weapon finding.

Defense Counsel 2 acknowledged during his testimony that at the time of Bowman's sentencing, he knew that the judge had the legal authority to make the deadly weapon finding on his own, but the first time Defense Counsel 2 became aware that the State was seeking the finding was from what the trial judge stated at the sentencing hearing. Defense Counsel 2 testified that in his experience in trying these cases, a deadly weapon finding was typically added during the charge conference for the guilt/innocence phase of the trial, and since that was not reached in this case, he did not believe that the State would seek a deadly weapon finding. According to Defense Counsel 2, when the State requests the finding, the trial judge "was going to grant it" because "the facts were there." Defense Counsel 2 agreed that, with Judge Thorne hearing the sentencing, "it wasn't automatic that there would be a deadly weapon[,]" whereas with Judge Stevens it would be automatic, and if a trial court on its own entered a deadly weapon finding "that would just be something that's outside of my control."

On cross-examination, Defense Counsel 2 agreed that the *State v. Joseph Duncan* case he previously cited to the trial judge is inapplicable to this case. Defense Counsel 2 also acknowledged that he was not aware of any policy when he was a prosecutor that required the prosecutor to give notice that the State would be

18

seeking a deadly weapon finding. According to Defense Counsel 2, he believed, based on texts sent between himself and Prosecutor 2, that neither the defense nor the State would be mentioning a deadly weapon finding. The text messages and the affidavits of Defense Counsel 1 and Bowman which were filed with the motion for new trial were admitted as exhibits for purposes of the hearing. Defense Counsel 2 agreed that he and Prosecutor 1 never had any communications about a deadly weapon finding, but Defense Counsel 2 stated that *he assumed* that Prosecutor 1 would not request a deadly weapon finding because Prosecutor 1 had never mentioned a deadly weapon finding to Defense Counsel 2 and based on Defense Counsel 2's text to Prosecutor 2 that "We won't mention D[eadly] W[eapon]." Defense Counsel 2 believed the State was included in the "We[.]" Defense Counsel 2 also testified that he told Bowman that the judge could still add the deadly weapon finding but that, based on his interpretation of the texts between Defense Counsel 2 and Prosecutor 2, Defense Counsel 2 believed the defense and the State would not bring up a deadly weapon finding. According to Defense Counsel 2, Bowman was misled because it was the defense's understanding that the State would not affirmatively seek a deadly weapon finding and that understanding induced her to plead guilty and she would be eligible for probation. Defense Counsel 2 agreed that he had advised Bowman there was a possibility that Judge Thorne could still make

19

a deadly weapon finding even if the defense and the prosecution did not bring it up, and Bowman was aware of that possibility at the time she entered her plea of guilty.

Defense Counsel 1 testified that he was the primary trial counsel for Bowman's defense. Defense Counsel 1 acknowledged that he mistakenly stated in his affidavit that the earlier plea offers to Bowman were rejected based upon an issue about a deadly weapon finding because that was an erroneous assumption. Defense Counsel 1 testified that he had relied on what Defense Counsel 2 had told him about the texts, and it was Defense Counsel 1's impression that the State would not be asking for a deadly weapon finding based on what Defense Counsel 2 had conveyed to Defense Counsel 1 about the texts. Defense Counsel 1 stated he then conveyed that impression to Bowman which induced her to enter a plea of guilty. According to Defense Counsel 1, this inducement was "not a misleading by anybody" but was instead "a miscommunication" about whether the State would seek a deadly weapon finding. Defense Counsel 1 testified that in retrospect it would have been better to get the agreement that the deadly weapon finding would not be mentioned by the parties at the sentencing in writing as part of the plea agreement so that there would not be any miscommunications; the signed plea papers did not address whether the State would seek a deadly weapon finding, but there was no box to check for that on the plea papers and that part of the plea deal would have to be handwritten on a blank. According to Defense Counsel 1, had he known that the State would seek a

deadly weapon finding, he would have advised Bowman she should not plead guilty. Defense Counsel 1 also agreed that in hindsight it would have been better to have made an argument for probation before the trial court entered the deadly weapon finding.

Bowman testified that when she found out that her defense experts were not going to be able to testify, she panicked, Defense Counsel 2 informed her that the State's latest offer had a cap of ten years, and he told her that the State would not affirmatively be seeking the deadly weapon finding and that probation was an option. According to Bowman, the fact that "probation would be on the table," opened her up to the idea of signing a plea, and it was important to her at that time that the State had agreed it would not seek a deadly weapon finding because she understood that would make her eligible for a probated sentence. Bowman recalled that at the time she entered her plea, no one discussed in court about whether there would be a deadly weapon finding. Bowman testified that the representation made to her that the State had agreed not to make an argument for an affirmative finding of a deadly weapon was a significant inducement to her to enter a guilty plea.

Bowman spoke with her mother while Bowman was incarcerated, and her mother relayed messages between Bowman and her attorneys regarding what information to put in Bowman's affidavit that was attached to her motion for new trial. According to Bowman, she never had any communications with the State about

what the State was offering, and she had relied on representations made to her by her defense attorneys. Bowman testified that at the sentencing when the prosecutor asked for an affirmative deadly weapon finding, she was "completely blown away[] [and] had no idea or [she] would have never signed the plea." Bowman agreed that she understood at the time of her plea that if she did not take the plea offer that she would be exposed to the jury assessing punishment at anywhere from two to twenty years. Bowman stated that prior to the case being assigned to Judge Thorne, she and her attorneys had never discussed a deadly weapon finding. She explained that after her case was assigned to Judge Thorne but prior to jury selection, her attorneys explained to her that either the district attorney could seek, or the judge himself could find, a deadly weapon was used which would preclude the chance for probation.

Prosecutor 2 testified that he is an assistant district attorney with Jefferson County and assisted Prosecutor 1 in prosecuting this case. Prosecutor 2 testified about the text messages with Prosecutor 1 that related to the plea in this case, the texts came from his cell phone, and the texts were admitted into evidence at the motion for new trial hearing. According to Prosecutor 2, once the trial court excluded the testimony of the two defense experts during the trial, Prosecutor 2 saw an opportunity for a plea agreement. Prosecutor 2 then approached Prosecutor 1 about that opportunity, and even though Prosecutor 1 was "fired up" at how the trial was going and ready to finish the trial, Prosecutor 1 agreed to let Prosecutor 2 attempt to

negotiate a plea with Bowman. Prosecutor 2 recalled that because the case was assigned to Prosecutor 1, Prosecutor 2 asked Prosecutor 1 if he would agree to offering Bowman a cap of ten years. Prosecutor 2 testified that in addition to the text messages, he talked to Defense Counsel 2 on the phone about being unsure which trial court judge would hear the plea. Prosecutor 2 testified that he believed that one of the reasons this was being discussed was the possibility of the deadly weapon finding. Prosecutor 2 recalled that the text messages admitted at the hearing were made after the phone call he had with Defense Counsel 2. He explained that they discussed the deadly weapon finding issue in the phone call, and when Prosecutor 2 texted to Defense Counsel 2 that "if you put [Prosecutor 1] in the spot of having to concede anything on the deadly weapon deal he is going to push back[]" he was conveying to Defense Counsel 2 that the State would not waive a deadly weapon finding.

Prosecutor 2 testified that Prosecutor 1 as lead attorney for the State never affirmed to him that the State would not argue for the deadly weapon finding, and Prosecutor 2 never made that affirmation to anyone. According to Prosecutor 2, based on his conversations with Defense Counsel 2, it was clear that Defense Counsel 2 was looking at the issue of notice and the issue that it was within the trial court's discretion to make the affirmative deadly weapon finding. Prosecutor 2 testified that using common sense, he interpreted Defense Counsel 2's text message

23

that "We won't mention DW[]" to mean that the *defense team* would not mention a deadly weapon finding, not that the *parties* would not mention it. Prosecutor 2 testified that neither he nor Prosecutor 1 ever misled the defense about whether the State would seek a deadly weapon finding, and Prosecutor 2 agreed that everything the trial court had in writing in fact indicated the opposite. Prosecutor 2 believed that Defense Counsel 2's plan was to argue in the sentencing hearing that the indictment was not sufficient notice of the deadly weapon issue and try to convince the trial court not to make a deadly weapon finding. Prosecutor 2 testified that neither he nor Prosecutor 1 ever conceded to the defense in this case that the State would not argue for a deadly weapon finding. According to Prosecutor 2, the State would not have conceded that because the State was already offering a lower cap, and conceding the deadly weapon issue would unnecessarily tie the State's hands and ability in the case. Prosecutor 2 testified that the State would have never waived arguing for a deadly weapon finding. Prosecutor 2 testified that he believed Defense Counsel 2 sent him the text message implying that the prosecution had committed prosecutorial misconduct because, in part, Defense Counsel 2 was protecting himself from an angry client. Prosecutor 2 recalled that it was at the defense's insistence that the trial court decided to make a deadly weapon finding at the beginning of the sentencing hearing as opposed to the end because it would make a difference as to how the defense would proceed with its evidence at the sentencing hearing.

24

The trial court denied the motion for new trial. Bowman timely appealed.

<u>Arguments on Appeal</u>

Bowman argues her plea was involuntary, requiring the reversal of her conviction. According to Bowman, she agreed to plead guilty "with the specific understanding that the State would not seek or argue for an affirmative finding of a deadly weapon." Bowman alleges that she was induced into pleading guilty based on misleading and incorrect information that her defense attorney told her. She contends her attorney told her the State had agreed it would not seek or argue for an affirmative finding of a deadly weapon, and otherwise she would not have pleaded guilty. Bowman asserts that, had she known that the trial court would enter a deadly weapon finding, she would have elected to continue with her jury trial and allowed the jury to determine her sentence with the possibility of probation.

The State argues that Bowman's guilty plea was voluntary, she failed to meet her heavy burden to show that she did not fully understand the consequences of her plea or that she suffered harm, she failed to show that the alleged misinformation was significant because it was not binding on the court or something that would change her punishment range, and at the time she pleaded guilty she was eligible for probation. According to the State, Bowman's written plea admonishments reflect that Bowman was fully admonished regarding her rights and the consequences of entering her plea, and the reporter's record indicates that the trial court confirmed

25

the admonishments and that Bowman understood that her plea agreement with the State was that if she pleaded guilty, the State's recommendation for punishment would not exceed ten years. The State contends that there is absolutely nothing in the plea paperwork stating the State would "waive" a deadly weapon finding or remain silent on the deadly weapon issue. The State asserts the paperwork left a blank for the agreed punishment recommendation provision that provides "[t]he State will not make a specific punishment recommendation[]" and left blank the section of the agreed punishment recommendation where the parties may include any other provision agreed to by the parties. The State also argues that Bowman's argument is not supported by the record. At the hearing on Bowman's motion for new trial, the State contends it established that it did not agree to concede anything on the issue of a deadly weapon finding or remain silent on the deadly weapon issue. The State emphasizes that Bowman knew that the trial court could enter a deadly weapon finding sua sponte, and she agreed during the motion for new trial hearing that she knew that if Judge Stevens was the judge deciding her sentence that he would automatically enter a finding of a deadly weapon given the facts of her case. The State also asserts that the text messages between the State and Bowman's counsel demonstrate that Bowman agreed to the plea agreement of a cap of ten years knowing that there was a chance the judge could enter a deadly weapon finding, and that it is clear that the State did not agree to probation.

We note that on appeal Bowman does not allege that her counsel was ineffective, nor does she contend that the State breached the plea agreement. Instead, Bowman argues only that her plea was involuntary because she and her defense counsel believed the State would not affirmatively seek a deadly weapon finding, and she claims that misunderstanding induced her to plead guilty and makes her plea involuntary.

Analysis

A judge cannot give probation to a defendant when it is shown that a deadly weapon was used or exhibited in the commission of the offense and there has been an affirmative finding of the use of a deadly weapon. Tex. Code Crim. Proc. Ann. art. 42A.054(b)-(d). The trial court has discretion when making a deadly weapon finding. *See Guthrie-Nail v. State*, 506 S.W.3d 1, 6 (Tex. Crim. App. 2015). Until the trial court makes a "separate and specific affirmative finding" that a deadly weapon was used, a defendant is eligible for probation, regardless of whether the indictment upon which he was convicted required proof of a deadly weapon. *Hooks v. State*, 860 S.W.2d 110, 113-14 (Tex. Crim. App. 1993).

Article 26.13 of the Texas Code of Criminal Procedure requires a trial judge to give certain admonishments before accepting a plea of guilty. *See* Tex. Code Crim. Proc. Ann. art. 26.13(a). With one exception not applicable here, these admonishments may be given either orally or in writing. *See id.* art. 26.13(d). If they

are in writing, the trial court must obtain a statement signed by the defendant and her attorney indicating the defendant understood the admonitions and was aware of the consequences of her plea. *See id*. A defendant must knowingly and voluntarily enter her guilty plea in order for the plea to be constitutionally valid. *See id.* art. 26.13(b); *Brady v. U.S.*, 397 U.S. 742, 748, 753, 755 (1970); *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006). "To be 'voluntary,' a guilty plea must be the expression of the defendant's own free will and must not be induced by threats, misrepresentations, or improper promises." *Kniatt*, 206 S.W.3d at 664 (citation omitted). When the record shows that the trial court gave a proper admonishment, there is a prima facie showing of a knowing and voluntary plea of guilty. *Ex parte Gibauitch*, 688 S.W.2d 868, 871 (Tex. Crim. App. 1985); *Ex parte Arjona*, 402 S.W.3d 312, 318 (Tex. App.—Beaumont 2013, pet. ref'd). ("The admonishment is a prima facie showing that the guilty plea was knowing and voluntary."). A defendant may still raise the claim that her plea was not voluntary; however, the burden shifts to the defendant to demonstrate that she did not fully understand the consequences of her plea such that she suffered harm. *See Gibauitch*, 688 S.W.2d at 871. "When a defendant enters into a plea, attesting that she understands the nature of her plea and that it is being made knowingly and voluntarily, she has the burden on appeal to show that her plea was involuntary." *Briggs v. State*, 560 S.W.3d 176, 187 (Tex. Crim. App. 2018) (citation omitted). Therefore, we must determine

whether Bowman has shown, considering the totality of the circumstances, that her plea was involuntary. *See Griffin v. State*, 703 S.W.2d 193, 195-96 (Tex. Crim. App. 1986); *Ex parte Arjona*, 402 S.W.3d at 318 (citing *Ex parte Zapata*, 235 S.W.3d 794, 795 (Tex. Crim. App. 2007); *Ex parte Young*, 644 S.W.2d 3, 4-5 (Tex. Crim. App. 1983)). "A plea is not rendered involuntary simply because the defendant did not receive the punishment [s]he hoped for, even if h[er] expectation was the result of something the defendant claims h[er] lawyer told h[er]." *Nicholas v. State*, 56 S.W.3d 760, 771 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd).

This Court considers the totality of the circumstances surrounding the plea in light of the entire record. *Merritt v. State*, No. 09-17-00140-CR, 2018 Tex. App. LEXIS 1873, at *21 (Tex. App.—Beaumont Mar. 14, 2018, pet. ref'd) (mem. op., not designated for publication) (citing *Ex parte Moody*, 991 S.W.2d 856, 858 (Tex. Crim. App. 1999)). Due process does not require the trial court to admonish a defendant of the consequences of a deadly weapon finding where the defendant signed written admonishments that included the range of applicable punishment. *See Wiggins v. State*, 499 S.W.3d 149, 151 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). Article 26.13 does not require the trial court to admonish a defendant on the effects of a deadly weapon finding on the eligibility for community supervision or parole. *Friemel v. State*, 465 S.W.3d 770, 774 (Tex. App.—Texarkana 2015, pet. ref'd). When the language in the indictment alleges that a vehicle in the manner of

its use caused death or serious bodily injury, it necessarily includes an allegation that the motor vehicle was a deadly weapon, and that language provides a defendant sufficient notice that the State might seek an affirmative finding on the use of the weapon. *See Acosta v. State*, No. 09-17-00433-CR, 2018 Tex. App. LEXIS 5186, at **4-5 (Tex. App.—Beaumont July 11, 2018, no pet.) (mem. op., not designated for publication) (citing *Blount v. State*, 257 S.W.3d 712, 714 (Tex. Crim. App. 2008); *Mills v. State*, 541 S.W.3d 381, 387 (Tex. App.—Houston [14th Dist.] 2017, no pet.)). That said, a defendant's election to plead guilty, when based upon ineffective assistance of counsel or erroneous legal advice of counsel, is not done voluntarily and knowingly. *Ex parte Moussazadeh*, 361 S.W.3d 684, 689 (Tex. Crim. App. 2012) (citing to *Ex parte Burns*, 601 S.W.2d 370, 372 (Tex. Crim. App. 1980) and *Ex parte Battle*, 817 S.W.2d 81, 83 (Tex. Crim. App. 1991)). "[A] guilty or nolo contendere plea will not support a conviction where that plea is motivated by significant misinformation conveyed by defense counsel." *Cardenas v. State*, 960 S.W.2d 941, 943 (Tex. App.—Texarkana 1998, pet. ref'd); *see Burke v. State*, 80 S.W.3d 82, 93 (Tex. App.—Fort Worth 2002, no pet.) ("a guilty plea will not support a conviction where that plea is motivated by significant misinformation conveyed by defense counsel[]"). A plea of guilty is invalid if it is induced by defense counsel's direct misrepresentation that the State has made a concession which in fact was not part of the plea agreement. *Ex parte Griffin*, 679 S.W.2d 15, 17 (Tex. Crim.

30

App. 1984). "A guilty plea may be found invalid if it is induced by erroneous advice or misrepresentations by defendant's counsel or some other officer of the Court." *Ex parte Klem*, 269 S.W.3d 711, 720 (Tex. App.—Beaumont 2008, pet. ref'd). In considering the voluntariness of a guilty plea, an appellate court examines the record as a whole. *See Martinez v. State*, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998); *Williams v. State*, 522 S.W.2d 483, 485 (Tex. Crim. App. 1975).

On appeal, the Appellant argues this case is like the facts in *Ex parte Moussazadeh III* and *Ex parte Griffin*. Both of those cases involved applications for habeas relief rather than direct appeals. *See Ex parte Moussazadeh*, 361 S.W.3d at 686-87; *Ex parte Griffin*, 679 S.W.2d at 15. In *Moussazadeh*, the defendant (a juvenile at the time of the offense) was under indictment for capital murder and he pled guilty to the reduced charge of murder without an agreement for punishment. 361 S.W.3d at 687. The trial court accepted the plea and later sentenced him to seventy-five years. *Id.* The undisputed evidence showed that, prior to the defendant's entry of his plea of guilty, his defense attorney had advised him of his parole eligibility and the advice he gave was wrong. *Id.* at 688. More specifically, the portion of his sentence that he was required to serve before he became eligible for parole was "double the portion that he was led to believe he must serve." *Id.* at 692. In the application for habeas relief the applicant alleged ineffective assistance of counsel because his attorney gave him the wrong advice on when he would be

31

eligible for parole. *Id.* at 688. The Court of Criminal Appeals noted that in *Ex parte Evans* (regarding advice from counsel about parole attainment not rendering a plea involuntary) it made an "incorrect statement of law" and an "erroneous logical leap[,]" applying the concept of the speculative nature of parole attainment to parole eligibility, and then in *Moussazadeh II* it had further conflated parole eligibility with parole attainment. *Id.* at 690. The terms of parole eligibility are succinct and statutory. *Id.* at 691. Moussazadeh's attorney could have easily determined the applicable parole eligibility from the new statute that went into effect eleven days before Moussazadeh committed the offense. *Id.* The Court concluded that the defendant had shown his attorney's performance was deficient, the applicant met the *Strickland* ineffective assistance standards including showing he would not have pled guilty if he had known the actual time he would have to serve before he became eligible for parole, and he was entitled to habeas relief. *Id.* at 692.

In *Griffin*, the defendant applicant filed a petition for a writ of habeas corpus seeking to have his burglary conviction invalidated on the grounds that his defense attorney misled him to believe that the State had agreed to revoke a probation on an earlier conviction in Walker County if he pled guilty to the charges in Harris County, and then the sentence in Walker County could be reformed to run concurrently with his sentence for the burglary conviction in Harris County. 679 S.W.2d at 15-16. Instead of revoking and reforming in Walker County, the Walker County prosecutor

32

merely put a "hold" on applicant when he entered prison for the Harris County five-year sentence, and the Walker County file showed the motion to revoke his probation in Walker County was still pending. Griffin claimed in his habeas petition that the State broke its bargain. The Court of Criminal Appeals noted that Griffin had the burden to prove by a preponderance of the evidence his allegations. *Id.* at 16-17. In finding that the applicant was misled by his own counsel, the Court was not imputing defense counsel's actions and advice to the State, and the Court determined that the case was one of a decision to plead guilty based on wrong information and not a "broken bargain case[.]" *Id.* at 18. As expressed to Griffin, the agreement would have eliminated his exposure to any future imprisonment on the Walker County case by allowing him to serve the sentences concurrently, but in fact he remained subject to the risk of ten years imprisonment for his Walker County conviction. The Court found that the applicant met his burden to show his plea of guilty was not a knowing, intelligent act done with sufficient awareness of relevant circumstances and likely consequences. *Id.*

Unlike *Moussazadeh*, Bowman does not make an ineffective assistance claim, and the advice her attorneys provided to her about the trial court's ability to make a deadly weapon finding was correct. She was told that the trial court may still make a deadly weapon finding even if the State did not affirmatively ask for it. Additionally, unlike *Griffin*, Bowman failed to show by a preponderance of the

33

evidence that her plea agreement was based on what her attorney told her about the State not mentioning or asking for an affirmative deadly weapon finding. Bowman's attorney correctly informed her the trial judge could still make a deadly weapon finding even if the State did not seek an affirmative finding and Bowman agrees she understood that risk when she entered her guilty plea. At the time of Bowman's guilty plea, the trial court had not made a deadly weapon finding, so Bowman was still eligible for probation. *See Hooks*, 860 S.W.2d at 113-14. The record shows that the trial court properly admonished Bowman orally and in writing, and Bowman testified that she understood the range of punishment. The Written Plea Admonishments signed by Bowman, admonished Bowman that she was charged with the second-degree felony offense of intoxication manslaughter with a vehicle and, if convicted, would face the range of punishment of "[a] term of not more than 20 years or less than 2 years in the Institutional Division of the Texas Department of Criminal Justice[]" and "a fine may be assessed not to exceed $10,000." In the stipulation signed by Bowman, she affirmed that she "under[stood] the foregoing admonishments from the Court and [was] aware of the consequences of [the] plea." The Agreed Punishment Recommendation signed by Bowman, states that "[t]he defendant's punishment will not exceed a cap of 10 years in the Institutional Division." Bowman and the State left blank the provision which states "The State

34

will not make a specific punishment recommendation." And nothing in the plea papers indicates that the State agreed to waive a deadly weapon finding.

The record reflects that the trial court judge discussed the deadly weapon finding with the attorneys prior to the sentencing. In the text messages between Defense Counsel 2 and Prosecutor 2, the prosecutor warned the defense counsel that the State would not waive its right to seek a deadly weapon finding if asked. The trial court made the deadly weapon finding making Bowman ineligible for probation. *See id.* at 113-14; *see also Heuermann v. State*, No. 01-96-00833-CR, 1998 Tex. App. LEXIS 316, at \*\*3-4 (Tex. App.—Houston [1st Dist.] Jan. 15, 1998, pet. ref'd) (mem. op., not designated for publication). Bowman's testimony at the hearing on her motion for new trial, as well as defense counsel's testimony at the hearing, established that Bowman understood at the time she entered her plea of guilty that the trial court could make a deadly weapon finding on its own without any request from the State, and if that finding was made by the trial court it would preclude the option of probation.

Bowman's defense attorney argued:

> If we thought that the State was going to move for the deadly weapon, it would have been a foregone conclusion she would not have had probation; and I would have never advised her to enter a plea of guilty to the Judge. I would have advised her to enter a guilty plea to the jury.

As explained in the plea documents, without the plea agreement which had a cap of ten years, the jury could have sentenced Appellant up to twenty years in prison and additionally assessed a fine. The defense attorney stated:

> [W]e told her that, you know, theoretically you could get probation from the jury, but maybe you wouldn't get probation from the jury. So, this was an avenue for arguing for probation from a Judge and showing the Judge sort of our mitigation case that we had prepared.

If the matter had been submitted to the jury, the jury also could have been asked to make an affirmative finding of a deadly weapon. The plea agreement to which Bowman agreed limited her potential punishment from up to twenty years in prison to no more than ten years, and at the time of the plea, she was still eligible for probation. Appellant failed to show how she was harmed by the misunderstanding that the State was not going to ask for an affirmative deadly weapon finding. *See Gibauitch*, 688 S.W.2d at 871.The record before us fails to show that the judge made an affirmative finding of a deadly weapon because the State requested it. As a matter of law, the trial court has the authority to add the affirmative finding to the judgment even without any request from the State, if the facts support that finding. *Flores v. State*, 690 S.W.2d 281, 283 (Tex. Crim. App. 1985) (en banc). Bowman does not argue that the facts do not support the affirmative finding.

Considering the totality of the circumstances as shown by the entire record before us, we conclude Appellant has not met her heavy burden to show that her plea was involuntary. *See Briggs*, 560 S.W.3d at 187; *Griffin*, 703 S.W.2d at 196;

36

*Gibauitch*, 688 S.W.2d at 871; *Merritt*, 2018 Tex. App. LEXIS 1873, at *21 (citing

*Ex parte Moody*, 991 S.W.2d at 858); *Ex parte Arjona*, 402 S.W.3d at 318. Bowman

received the benefit of her plea agreement, and her sentence was capped at ten years.

We overrule Appellant's issue on appeal. We affirm the trial court's judgment.

AFFIRMED.

LEANNE JOHNSON
Justice

Submitted on August 20, 2025
Opinion Delivered October 22, 2025
Do Not Publish

Before Golemon, C.J., Johnson and Wright, JJ.